**BRUCE A. SALZBURG, #5-1711**
**TRACI L. LACOCK, #6-4009**
Hirst Applegate, LLP
1720 Carey Avenue, Suite 400
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
bsalzburg@hirstapplegate.com
tlacock@hirstapplegate.com

**JOHN A. MASTERSON, #5-2386**
**ALAINA M. STEDILLIE, #6-4327**
Welborn Sullivan Meck & Tooley, P.C.
159 N. Wolcott, #220
Casper, WY 82601
Phone: (307) 234-6907
Fax: (307) 234-6908
jmasterson@wsmtlaw.com
astedillie@wsmtlaw.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CRAIG HEDQUIST, and<br>HEDQUIST CONSTRUCTION, INC.,<br>A Wyoming Corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>JOHN PATTERSON,<br>ANDREW BEAMER, and<br>THE CITY OF CASPER,<br><br>        Defendants. | Civil No. 14-CV-045-J |

## *DEFENDANTS' RESPONSE TO PLAINTIFFS' FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING COMMON INTEREST CLAIMS*

### INTRODUCTION

In response to numerous subpoenas and requests for production served by Plaintiffs on Defendants John Patterson and the City of Casper, Defendants have asserted various privileges, including attorney-client, work product, and common interest.

1

Although Plaintiffs assert claims against Patterson in his individual and official capacities, as well as claims against the City of Casper, and each have responded separately to the discovery requests, for the sake of efficiency, Defendants file a joint response.[1]

## I. Background and Roles of Each Involved Person.

To determine how attorney-client privilege and the common interest privilege have been properly asserted by Defendants it is necessary to understand each person's role.

*John Patterson, Defendant*. Patterson served as the City of Casper City Manager until his resignation from that position on November 1, 2015. The City of Casper operates under a council/manager form of government where the City Manager serves as the chief executive of the city government. Wyo. Stat. Ann. § 15-4-203 through 206.

*City of Casper City Council*. The Casper City Council consists of nine elected representatives of the various wards within Casper. The Casper City Council functions as the policy-making body for the city government—it is the governmental analog of a corporate board of directors. The Mayor and Vice Mayor are elected by the council members.

*Craig Hedquist, Plaintiff*. Hedquist is a principal in Hedquist Construction, Inc. (HCI), also a Plaintiff in this case. He was elected to the Casper City Council in November 2012, and took office in January 2013. He served as a Casper City Council member until his resignation on July 26, 2015.

*Andrew Beamer, Defendant*. Beamer currently serves as the Director of Public Services for the City of Casper. Prior to his appointment, he served as the Casper City Engineer. As a result of an incident that occurred on a job site on August 28, 2013, Beamer filed a complaint against Hedquist, claiming that Hedquist had engaged in workplace violence. The complaint

---

[1] Defendant Andrew Beamer has not yet responded to any request for production, and therefore, has not asserted any privilege at issue in the instant Motion to Compel.

2

was investigated by Casper attorney Kathleen Dixon who, on September 20, 2013, issued a comprehensive report which found that the complaint was substantiated.

*Rick Harrah*. Harrah served as the Director of Public Services at the time that Beamer was City Engineer, and at the time of the August 28, 2013, incident which led to the workplace violence complaint. On August 29, 2013, Harrah made a formal complaint concerning Hedquist's conduct to City Manager Patterson. The complaint alleged conduct by Hedquist which, if true, may have violated ethics and conflict of interest laws.

*William Luben*. Luben is the City Attorney for the City of Casper. Under the city manager form of government Luben is employed by the City Council. See Wyo. Stat. Ann. §15-4-202. As stated in the Casper City Council Handbook, the City Attorney is the "legal advisor for the Council, City Manager, and department heads." Deposition Exhibit 99, p. 37. His job description includes "[r]ender[ing] legal opinions to the City Council, City boards and commissions, City Manager, and department staff as required…" Deposition Exhibit 100, p. 2.

Following the August 28, 2013 incident on a job site, Beamer filed a workplace violence complaint against Hedquist. Because Hedquist was a member of the City Council which employed him, Luben declared a conflict of interest with regard to the complaint, and disqualified his office from dealing with the matter. Instead, he retained Judy Studer to serve as substitute counsel for the City Attorney to provide advice and counsel to the City with respect to issues related to the workplace violence complaint.

In addition, the August 29, 2013, complaint by Rick Harrah against Councilman Hedquist raised concerns that Hedquist's conduct violated ethics and conflicts of interest laws. Once again, Luben disqualified his office from participation in the matter. By engagement letter dated September 16, 2013, Ms. Studer's scope of representation was expanded to provide advice and

counsel to the City with respect to the possible conflicts of interest. *See* Luben Affidavit, Ex. A hereto, ¶ 4.

Ultimately, Luben declared a conflict with regard to any matter in which Hedquist or HCI was, or could have been, adverse to the City, and all such matters were referred to Ms. Studer. The scope of Studer's representation included: 1) advice and counsel regarding the Beamer workplace violence complaint; 2) advice and counsel regarding the Harrah conflicts of interest complaint; 3) representing the City in disputes with HCI regarding four public works contracts; 4) advice and counsel to the City regarding disqualification of HCI from further public works contracts; 5) advice and counsel regarding amendments to the Casper City Ordinance governing removal of city council members from office; 6) advice and counsel regarding bidding qualifications; 7) advice and counsel regarding amending the employment contracts of certain employees to indemnify for punitive damages on account of conduct that is within the scope of the employee's duties; 8) responding to a public records request filed by Cheyenne attorney Bruce Moats on behalf of Hedquist; and 9) defending the City and Patterson in a declaratory judgment action related to the public records request. *See* Luben Affidavit.

*Wes Reeves*. Reeves is a partner at Park Street Law Offices. Originally, Kathleen Dixon was retained to serve as the City's counsel with regard to Harrah's conflict of interest complaint. After objections were made by Hedquist's counsel to Dixon serving in that capacity, Reeves was retained. On January 17, 2014, Reeves filed a Petition for Removal from Office or Other Remedies. Patterson, in his official capacity, was named as the Petitioner.

*Civil Engineering Professionals, Inc. (CEPI)*. CEPI is a civil engineering firm that was designated as the project engineer on three of four public works contracts that the City had with HCI during 2013-14. Tom Brauer, principal with CEPI, ultimately served as mediator on the

four City/HCI contracts, and all of the disputes were settled with HCI paying liquidated damages to the City for its failure to complete the projects on time.

*Jeffery Pope*.   Pope is an associate with Holland and Hart, LLP.  He was retained by Wyoming Machinery to respond to a subpoena seeking emails from Patterson's wife's work computer.  Salzburg represented Mrs. Patterson in responding to a similar subpoena served upon her.

## II.     Attorney-Client Relationships and Attorney-Client Privilege

The attorney client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*. Attorney-client privilege is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer,* 132 F.3d 504, 510 (9th Cir. 1997).  The attorney-client privilege extends to governmental clients.

> The objectives of the attorney-client privilege apply to governmental clients. "The privilege aids government entities and employees in obtaining legal advice founded on a complete and accurate factual picture." 1 Restatement (Third) of the Law Governing Lawyers § 74, Comment b, pp. 573-574 (1998). Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys.

*United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70, 131 S. Ct. 2313, 2320-21 (2011).

Attorney-client communication between the counsel retained to represent the City of Casper and the client, the city, are similar to communications between an attorney and a corporate client. "Access to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to 'promot[ing] broader public interests in the observance of law and administration of justice.'" *North Dakota v. United States*, 64 F. Supp. 3d 1314, 1331 (D.N.Dak. 2014) (internal citations omitted).

Some communication between corporate counsel and his client is protected by the attorney-client privilege. Similarly, when counsel represents a municipality, some communication is protected by the attorney-client privilege. The analysis to determine which communication is protected by the attorney-client privilege is the same in both of these situations. See *In re County of Erie*, 473 F.3d 413, 419 (2nd Cir. 2007) ("At least in civil litigation between a government agency and private litigants, the government's claim to the protections of the attorney-client privilege is on a par with the claim of an individual or a corporate entity.").

In *Upjohn v. United States*, 449 U.S. 393, 396-397 (1981) the Supreme Court rejected the "control group" test as the appropriate analysis to determine if communication within a corporate setting was covered by attorney-client privilege. The Court found the control group test "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Id*. at 392. The court further held, "[t]he narrow scope given the attorney-client privilege by the court below not only makes it difficult for corporate attorneys to formulate sound advice but also threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id*. Furthermore, the Court found the control group test

inappropriately limits attorney-client privileged communication only to upper management, and that middle and lower level corporate employees can communicate relevant information to an attorney which may be within the scope of the attorney/client privilege. *Id*. at 391.

Therefore, the Court instructed that whether communication in a corporate setting is covered by the attorney-client privilege is to be made on a case-by-case basis. *Id.* at 396-397. Specifically this court should consider whether the employee was communicating with counsel "at the direction of corporate superiors in order to secure legal advice from counsel" and that "communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id*. at 394. Courts in the 10th Circuit have applied the *Upjohn* analysis in several cases. *E.g. In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010); *W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1911 (D. Kan Jan. 31, 2002); and *Adams v. Gateway, Inc.*, 2003 U.S. Dist. LEXIS 28559 (D. Utah De. 30, 2003).

Due to the conflict declared by the City Attorney, William Luben, the City of Casper retained Judy Studer to represent the City in matters where the City was, or could be, adverse to Hedquist or HCI. Pursuant to the precedent set forth in *Upjohn*, we analyze the attorney-client relationships and related communications to demonstrate how the attorney-client privilege applies to different individuals.

First, Studer was retained to represent the City of Casper in the matter involving the workplace violence complaint and conflict of interest issues involving Hedquist. Studer's legal communications with Patterson in his role as City Manager, as well as the City Council (excluding Hedquist) regarding these issues are protected by the attorney-client privilege. Studer

7

advised the City on these issues and functioned as City Attorney at City Council meetings involving these issues.

Later in 2013, Studer was retained to represent the City regarding disputes related to four public works projects involving HCI. CEPI was designated as the project engineer for three of those projects. Tom Brauer, a principal in CEPI, served as mediator to settle the disputes on all four of these contracts between the City and HCI. Any legal communication between Studer, Patterson, members of the City Council (excluding Hedquist), and the City Engineer's office staff are all covered by attorney-client privilege. These communications are covered by the attorney client privilege because they were within each of the scope of the employees' duties as a city employee and each of these employees was sufficiently aware that they were engaging in communication for legal advice.

Studer also represented the City of Casper regarding a public records request filed by attorney Bruce Moats, on behalf of Hedquist, and in the declaratory judgment action which followed. (*Hedquist v. City of Casper and John Patterson*, Seventh Judicial District, State of Wyoming, Docket 099097.)[2] Again, Studer's legal communications with Patterson, members of the City Council (excluding Hedquist), and the police department are protected by the attorney-client privilege. The public records requests were specifically directed toward these individuals, and it was necessary for Studer in her role as attorney for the city to have confidential discussions with these individuals to appropriately respond to the requests.

Ultimately, Studer was retained to represent the City's interests in nine legal matters which involved Hedquist or HCI. See Affidavit of Luben.

Finally, Wes Reeves was hired to represent the City Manager's office in the petition to remove Hedquist from the City Council. Patterson was the City Manager at the time of this

---

[2] This public records request largely duplicated the discovery requests in this litigation.

8

petition; therefore, he was named as the petitioner.  Any legal communication between Patterson and Reeves is clearly covered by the attorney-client privilege.  Furthermore, Studer represented the City Manager's office with respect to the workplace violence complaint and the conflict of interest issues.  Wes Reeves represented the City Manager's Office with respect to the Petition for Removal from Office or Other Remedies.  When Studer and Reeves were representing the same client, the City Manager's Office, communication between them and Patterson is all protected by the attorney-client privilege, as well.

### III.     Common Interest/Joint Defense Privilege.

Generally, if a communication between an attorney and his client occurs in the presence of a third party, the attorney-client privileged is waived.  The common interest privilege does not create a separate basis for attorney-client privilege; instead it is an exception to the third-party waiver of attorney-client privilege.  If the parties communicating have a common interest in a legal purpose, however, the communication remains privileged.  Courts have imprecisely defined the common interest privilege and the joint defense privilege, but they are closely related.  Another label is the "allied lawyer" privilege.  However, "it is not clear that the label adds any clarity to the mix.  On the contrary, it usually confuses the requisite analysis.  For instance, one can have a common interest which will allow a sharing of privileged communications without waiver without having a "joint defense" to any pending or prospective litigation at all, either actual at the time that the privilege is shared or prospective."   Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, American Bar Association (2007 Ed.), pp. 274-75, *citing* 24 Charles A. Wright & Kenneth A. Graham, Jr., *Federal Practice & Procedure* § 5493 (1997).

The common interest doctrine "normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Frontier Ref. v. Gorman-Rupp. Co.*, 136 F.3d 695, 705 (10th Cir. 1998). A community of interest is found where "different persons or separate corporations [] have an identical legal interest **with respect to the subject matter of the communication** between attorney and a client concerning legal advice . . . The key consideration is that the nature of the interest must be identical, not similar…." *Duplan Corp. v. Deering Milliken, Inc*., 397 F.Supp. 1146, 1172 (D.S.C. 1974) (emphasis added).

Section 76(1) of the Restatement (Third) of the Law Governing Lawyers (2000) describes the common interest privilege applying in the following circumstances:

> If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under §§ 68-72 that relates to the matter is privileged as against third person. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.

The joint defense privilege applies when parties are already engaged in litigation and their interests coincide. The Federal District Court of Wyoming has held, "[t]he joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." *Western Fuels Ass'n, Inc. v. Burlington N.R.R. Co.*, 102 F.R.D. 201, 203, (D. Wyo. 1984). The court further held, "A party to joint defense communications may waive the attorney-client privilege by disclosing such confidential information to persons outside the scope of the joint defense relationship." *Id*. (internal citations omitted).

10

The "[s]haring of information between counsel for parties having common interests does not destroy the work product privilege, during the course of the litigation." *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572, 578 (S.D.N.Y. 1960).

### A.     Patterson's Assertions of Common Interest/Joint Defense

Patterson asserts various legal communications as protected pursuant to the common interest privilege. Plaintiffs have not asserted which specific communications they believe have been inappropriately withheld from disclosure on the basis of the common interest privilege. Therefore, Patterson addresses each grouping of communications that were withheld on the basis of the attorney-client and common interest privilege. Patterson has submitted a privilege log, Exhibit 3 to Plaintiffs' Brief[3], and the following communications have been appropriately asserted as protected pursuant to the common interest privilege:

   *i.     Communication between Salzburg, Masterson, Stedillie and Patterson.*

Patterson in his official capacity as City Manager is represented by John Masterson and Alaina Stedillie of Welborn Sullivan Meck & Tooley, P.C. in the present litigation.[4] Patterson in his individual capacity is represented in this lawsuit by Bruce A. Salzburg and Traci L. Lacock of Hirst Applegate, LLP. These attorneys in their representative capacities entered into a Joint Defense Agreement. Communications between any and all of these individuals is covered by the common-interest/joint-defense privilege. The lawyers face a common litigation opponent, Hedquist and HCI, in this matter and "in order to adequately prepare a defense" they must be able to communicate in confidence. See *Western Fuels*, 102 F.R.D. at 203. Communications amongst these individuals are exactly the type envisioned by the court in *Western Fuels*; therefore, they are appropriately protected by the common-interest/joint-defense privilege.

---

[3] Exhibit 3 to the Plaintiffs' brief includes a spreadsheet which was not part of Patterson's privilege log.
[4] John Masterson and Alaina Stedillie also represent the City of Casper in this lawsuit.

ii. *Communication between Salzburg, Stedillie and Pope*

Communications between Salzburg, Stedillie and Pope are also protected pursuant to the common interest privilege. Jeffery Pope was retained by Western Machinery to respond to Plaintiffs' subpoena regarding Cindy Patterson's work computer and emails. Salzburg represented Cindy Patterson, individually, in her response to a similar subpoena. Stedillie and Salzburg both represent Patterson in the current litigation with an executed Joint Defense Agreement. Stedillie and Salzburg had an equal interest in protecting the confidential marital communication between Patterson and his wife. All communications between these individuals dealt with the issue of the subpoena response and the related marital privilege. Salzburg, Stedillie and Pope's interests were identical as to the "subject matter of the communication." *Duplan Corp.*, 97 F.Supp. at 1172. Therefore, these communications are protected by the common interest privilege.

iii. *Communications between Patterson, Salzburg, Masterson, Stedillie and Studer*

As described in detail above, Studer represented the City of Casper in various matters involving Hedquist. During the course of her representation of the City, Studer had protected attorney-client communications with Patterson. Masterson and Stedillie represent the City of Casper and Patterson in his official capacity in the current litigation. Salzburg represents Patterson in his individual capacity. Masterson, Stedillie and Salzburg have a Joint Defense Agreement. Studer, while not part of the agreement, has a community of interest with Masterson, Stedillie and Salzburg in her representation of the City in matters involving Hedquist. Again, the focus is on the identical legal interest in the subject matter of the communications, not the representations. Studer, Masterson, Stedillie and Salzburg are communicating about their

12

identical legal interest: the representation of Patterson or the City of Casper in matters involving Hedquist. Therefore, these communications are protected by the common interest privilege.

> iv. *Communications between Patterson, Studer, Salzburg, Masterson, Luben, and Michael Szewczyk*

Communications between Patterson, Studer, Salzburg, Masterson, Luben and Michael Szewczyk have been identified as privileged pursuant to the common-interest privilege. Szewczyk is the City of Casper IT Manager. Szewczyk in his employment duties as the City of Casper IT Manager was consulted in order to identify responsive electronic documents, and to search the City's databases and produce potentially responsive materials. Studer, Masterson and Stedillie in their representation of the city shared attorney-client privilege with Luben and Szewczyk. The communication with Szewczyk and Luben was within his official duties as a city employee for the purpose of obtaining legal advice; therefore, these communications are protected by attorney-client privilege. See *Upjohn*, 449 U.S. at 394. Furthermore, all of the persons involved in this communication have the identical legal interest of responding to Plaintiffs' discovery requests on behalf of Patterson.

> v. *Communications between Salzburg, Masterson, Patterson, Studer, and Reeves.*

All of the parties to these communications represent Patterson either directly or as an employee of the city under the *Upjohn* analysis. Reeves represented the City Manager, Patterson, in the petition to remove Hedquist from the City Council. As stated in *Western Fuels Ass'n*, "[t]he joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." 102 F.R.D. at 203. The petition to remove Hedquist is at the center of Plaintiffs' claims in this lawsuit. For Salzburg, Masterson and Stedillie to be able to fully represent their client, Patterson, they can communicate

13

confidentially with Patterson's counsel, Wes Reeves, regarding the petition. The legal interests are identical for this communication; therefore the communication is protected by the common interest/joint defense privilege.

### B. City of Casper/Patterson's Official Capacity Assertion of Common Interest.

#### *i. Attorney-client privilege applies to CEPI*

Plaintiffs move this Court to order Defendants to produce communications between CEPI and the City of Casper, its various employees, and its attorneys. The Court should not do so, however, as case law firmly establishes that an independent contractor, such as CEPI, is bound by the attorney-client privilege in specific circumstances.

#### a. CEPI's contracts with the City

The City of Casper frequently uses CEPI as an engineer on its public works contracts. In the contracts at issue in this case, CEPI's role is clear; it is an independent contractor of the city. The contracts also set forth specific duties of CEPI, including acting as the Owner's (City of Casper) representative, Standard General Conditions of the Construction Contract ("SGC") (Ex. B hereto) § 9.01A; Contract for Professional Services ("CPS") (Ex. C hereto) ¶ H(1); making decisions regarding the requirements of contract documents and whether the contractor has provided acceptable work, Ex. B at § 9.02A, Ex. C at ¶¶ H(4)(a), (c), H(11); advising the City which subcontractor bids to accept, Ex. B at § 11.01A(3); and determining when the contractor has substantially completed the contract requirements, Ex. B at § 9.06A, § 9.09A, § 14.04, Ex. C at ¶ H(14). These provisions make CEPI the agent of the City of Casper.

#### b. Status of independent contractors or non-employee agents

Courts within the Tenth Circuit have recognized independent contractors and other non-employee agents as "employees" for the purpose of claiming attorney-client privilege when the

independent contractor has a significant relationship to both the entity and the transaction that is the subject of the entity's need for legal services. *Martensen v. Koch*, 301 F.R.D. 562, 576 (D. Colo. 2014). Once this relationship test has been fulfilled, there are three more prongs to the test to determine whether communications between a governmental entity's independent contractor and the entity's counsel are protected:

> (1) the communication was made for the purpose of seeking or providing legal assistance; (2) the subject matter of the communication was within the scope of the duties provided to the entity by the agent or independent contractor; and (3) the communication was treated as confidential and only disseminated to those person with a specific need to know its contents.

*A.H. ex rel. Hadjih v. Evenflo Co.*, 2012 WL 1957302, at *4 (D. Colo. 2012) (citing *Alliance Constr. Solutions, Inc. v. Dep't of Corrections*, 54 P.3d 861, 869 (Colo. 2002)).

Furthermore, the courts have been clear that "the attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it but also to the *giving of information* to the lawyer to enable [her] to give sound and informed advice." *A.H. ex rel. Hadjih v. Evenflo Co.*, 2012 WL 1957302, at *2 (D. Colo. 2012) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)) (emphasis added).

### c. Application

Based on the tests set forth above, any communications between CEPI and Judy Studer regarding the contracts with Hedquist Construction, Inc. would fall under the attorney-client privilege. The same is true for communications between CEPI and the City of Casper and its employees.

First, CEPI has a significant relationship to the City of Casper; not only did it serve as its engineer on these projects, among many others throughout the past, but it also offered its

15

services to serve as a mediator between the parties in discussing potential settlement agreements. Additionally, CEPI clearly has a significant relationship to the transactions at issue; it was the engineer on the projects and had intimate knowledge of the work required and work actually performed.

Second, pursuant to the terms of its contracts with the City, CEPI determined when contractual requirements had been met, up to and including substantial completion. CEPI would then provide this information to the City so that it and its attorneys could determine if the contract had been completed to its satisfaction. During the mediation process, CEPI provided information about the contracts, the work performed, the work left to be performed, and the potential for compromise to the City's attorney, Ms. Studer, so that she could appropriately advise her client regarding settlement discussions.

Third, as stated above, the subject matter at issue was the exact category of information that CEPI was tasked with managing and providing in its contracts with the City. Finally, the information was kept confidential between CEPI, Ms. Studer, and the City and its appropriate employees, as noted on the Defendants' privilege logs. For the purposes of the communications challenged by the Plaintiffs, CEPI should be considered an employee of the City of Casper and be subject to the attorney-client privilege.

      *ii. Common Interest Privilege*

As to those communications between CEPI and various defendants, all are subject to protection under the attorney-client privilege, as well as the common interest privilege.

### a. Communications between Patterson, City Council, Beamer and CEPI

All communications between CEPI and anyone from the City, whether the communication is with Patterson, City Council or Andrew Beamer, are subject both to the attorney-client and the common-interest privileges.

First, any communications between any of the Defendants and CEPI that also include any of the attorneys mentioned above are subject to the attorney-client privilege, as CEPI may be considered an employee of the City of Casper. *Martensen*, 301 F.R.D. at 576; *Upjohn*, 449 U.S. at 389. During the discussions held to settle conflicts on the four projects at issue in the case, CEPI provided necessary information to Ms. Studer so that she could properly advise her clients; these conversations are clearly privileged.

Second, communications between Patterson, Beamer, or the City Council and CEPI are also subject to the common interest/joint defense privilege because, when acting as the City's/Owner's Representative on the projects at issue, CEPI had an identical legal interest as the City as a whole, including the Council, Mr. Patterson and Mr. Beamer – to ensure that the projects were completed pursuant to the requirements in the contract documents.

### b. Communications between City Council and Beamer

Undersigned counsel are unaware of any communications between Mr. Beamer and members of the City Council regarding the matters at issue in this case for which the Defendants have asserted a privilege and withheld from the Plaintiffs. If any such communications do exist, however, they would fall under the common interest privilege, as the Council and Mr. Beamer had an identical legal interest during the mediation with Plaintiffs concerning four of his public works contracts; both the Council and Mr. Beamer needed to ensure that the projects were completed pursuant to the requirements of the contract documents. Furthermore, counsel for Mr.

Beamer and for the City Council signed a Joint Defense Agreement, they share a common litigation opponent, and all communications are covered by the common interest/joint defense privilege to allow them to communicate in confidence "in order to adequately prepare a defense." See *Western Fuels*, 102 F.R.D. at 203.

### c. Communications between Patterson and Beamer

The only communications between Mr. Beamer and Mr. Patterson for which counsel have asserted a privilege are those that include an attorney, discuss legal advice provided by a shared attorney, and/or are covered by the Joint Defense Agreement. Once again, the common interest privilege clearly applies.

### d. Communications between Patterson and City Council

Defendants agree that for the purposes of the Petition for Removal only, Mr. Patterson and the Council did not have a common interest, and the City of Casper will release any withheld communications to Plaintiffs. However, once the Council decided to follow Ms. Rose's recommendation in dismissing the Petition for Removal, Mr. Patterson and the Council *did* develop a common interest as to all other aspects of this case. Furthermore, the City Council and Mr. Patterson in his official capacity share counsel, and, as with other Defendants, counsel signed a Joint Defense Agreement. Any further discussions have been rightfully withheld.

## IV. CONCLUSION.

Plaintiffs' reliance on the parties' relationships when asserting the common interest privilege is the incorrect focus. The focus of the community of interest is on the communication, not the representation. *Duplan Corp.,* 397 at 1172.

Plaintiffs' claims appear to try to limit Studer's attorney-client relationship to the Casper City Council; however, that approach is too narrow. The attorney-client relationship between a

18

lawyer and a corporate client extends not only to the board of directors, but also to the corporate managers and employees. *Upjohn*, *supra.* The relationship between a government lawyer and the governmental entities she represents is functionally equivalent to that of the lawyer and a corporate client. *Jicarilla Apache Nation*, *supra.*

For these reasons, the Plaintiffs' Motion to Compel disclosure of communications subject to the common interest privilege must be denied.

Dated this 14th day of March, 2016.

| JOHN PATTERSON, in his official capacity and the CITY OF CASPER, Defendants | JOHN PATTERSON, in his individual capacity, Defendant |
|---|---|
| BY:     /S/     <br>**JOHN A. MASTERSON, #5-2386**<br>**ALAINA M. STEDILLIE, #6-4327**<br>WELBORN SULLIVAN MECK & TOOLEY, P.C.<br>Attorneys for Above-Named Defendant<br>159 N. Wolcott, #220<br>Casper, WY 82601<br>Phone: (307) 234-6907<br>Fax: (307) 234-6908<br>jmasterson@wsmtlaw.com<br>astedillie@wsmtlaw.com | BY:     /S/     <br>**BRUCE A. SALZBURG, #5-1711**<br>**TRACI L. LACOCK, # 6-4009**<br>HIRST APPLEGATE, LLP<br>Attorneys for Above-Named Defendant<br>1720 Carey Avenue, Suite 400 (82001)<br>P. O. Box 1083<br>Cheyenne, WY 82003-1083<br>Phone: (307) 632-0541<br>Fax: (307) 632-4999<br>bsalzburg@hirstapplegate.com<br>tlacock@hirstapplegate.com |

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendants' Response to Plaintiffs' First Motion to Compel Production of Documents Concerning Common Interest Claims* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 14 March 2016, and that copies were served as follows:

| | |
|---|---|
| John H. Robinson<br>Jamieson & Robinson, LLC<br>185 W. Broadway, Suite 101<br>P. O. Box 4285<br>Jackson, WY 83001<br>*Attorney for Plaintiffs* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☒ E-FILE |
| F. R. Chapman<br>Marci Crank Bramlet<br>Chapman, Valdez & Lansing Law Offices<br>125 W. 2nd Street<br>P. O. Box 2710<br>Casper, WY 82602<br>*Attorneys for Plaintiffs* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☒ E-FILE |
| Kay Lynn Bestol<br>Sundahl, Powers, Kapp & Martin<br>1725 Carey Avenue<br>P. O. Box 328<br>Cheyenne, WY 82003-0328<br>*Attorney for Defendant Beamer* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☒ E-FILE |

*/s/ Cheri J. Coffey*
OF HIRST APPLEGATE, LLP
Attorneys for Above-Named Defendant