BRUCE A. SALZBURG, #5-1711
TRACI L. LACOCK, #6-4009
Hirst Applegate, LLP
1720 Carey Avenue, Suite 400
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541   Fax:
Fax: (307) 632-4999
bsalzburg@hirstapplegate.com
tlacock@hirstapplegate.com

JOHN A. MASTERSON, #5-2386
ALAINA M. STEDILLIE, #6-4327
Welborn Sullivan Meck & Tooley, P.C.
159 N. Wolcott, #220
Casper, WY 82601
Phone: (307) 234-6907
(307) 234-6908
jmasterson@wsmtlaw.com
astedillie@wsmtlaw.com

KAY LYNN BESTOL, #5-2949
Sundahl, Powers, Kapp & Martin, LLC
1725 Carey Ave
P. O. Box 328
Cheyenne, WY 82003-0328
Phone: (307) 632-6421
Fax: (307) 632-7216
kbestol@spkm.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CRAIG HEDQUIST, et al., | } |
| Plaintiffs, | } |
| vs. | } Civil No. 14-CV-045-J |
| JOHN PATTERSON, et al. | } |
| Defendants. | } |

## *DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS ON THE BASIS OF CRIME-FRAUD*

Defendants' jointly respond to Plaintiffs' Motion as follows:

### I. Argument

The seminal case discussing the application of the crime-fraud doctrine is *United States v. Zolin*, 491 U.S. 554 (1989). In *Zolin*, the Court reiterated the importance of the attorney-client privilege to encourage the "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 562, citing *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). But the privilege is not without limitation, the Court acknowledged that the attorney client privilege has the effect of

withholding relevant information from the fact finder, and therefore it applies only where necessary to achieve its purpose. *Id.* It follows that:

> [A]ttorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection—the centrality of open client and attorney communication to the proper functioning of our adversary system of justice—ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.* It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy, between lawyer and client does not extend to communications made for the purpose of ***getting advice for the commission of a fraud or crime.***

*Id.* at 562–63. (Citations and quotations omitted) (emphasis supplied). *Zolin* explicitly acknowledges the purpose of the exception as it relates to the commission of a fraud or crime; a crime is "an act committed or omitted, in violation of a public law" and a "fraud" is "some deceitful practice . . .with intent to deprive another of his right, or in some manner to do him an injury." *Black's Law Dictionary*, 427, 731 (9th ed. 2009).

The Court delineated why the party requesting *in camera* review must make a threshold showing that such review is appropriate. *Id.* at 570. A blanket rule allowing *in camera* review would "place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk," raise due process concerns, and burden district courts with evaluation of "large evidentiary records without open adversarial guidance by the parties." *Id.* at 571. Moreover,

> [t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents. Courts of Appeals have suggested that in camera review is available to evaluate claims of crime or fraud only "when justified," *In re John Doe Corp.*, 675 F.2d 482, 489–490 (CA2 1982) or "[i]n appropriate cases." *In re Sealed Case,* 676 F.2d 793, 815 (D.C. App. 1982).

*Id.* Thus, to avoid wasteful and needless "fishing expeditions" there must be "reason to suspect crime or fraud." *Id.* Striking a balance between protection of the attorney-client relationship and risk of crime or fraud, the Court determined that before engaging in an *in camera* review of materials claimed to be privileged, "the judge should require a showing of a factual basis

2

adequate to support a good faith belief by a reasonable person." *Id.* at 562, citing *Caldwell v. District Court,* 644 P.2d 26, 33 (Colo.1982). It is not enough that communications related to a crime or fraud may exist, the crime-fraud exception applies only where the communications were "made with an intent to further an unlawful act." *U.S. v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989).

Even if such a prima facie showing is made, the decision whether to engage in an *in camera* review is within the district court's discretion. *Zolin*, at 562. The district court can exercise its discretion whether to conduct an *in camera* review based on the facts and circumstances of the particular case, including the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception applies. *Id.*

*Zolin* did not include tortious activity within the crime-fraud doctrine; however, some jurisdictions have extended the exception to torts. The 10th Circuit has refused to extend the doctrine. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) (citing to *Zolin*, explaining that "[s]ince the court correctly ruled that the crime-fraud exception does not extend to tortious conduct generally, but is limited to attorney advice in furtherance of a crime or fraud . . . the court did not abuse its discretion in denying the request for an *in camera* review of the documents."); *see also T Com LLC v. SOS Teledata Inc*, No. 10-CV-498-CVE-FHM, 2011 WL 13060412, at *2 (N.D. Okla. Aug. 12, 2011) (holding that the 10th circuit has stated that the crime-fraud exception does not extend to torts); *Oil, Chem. & Atomic Workers Int'l Union v. Sinclair Oil Corp.*, 748 P.2d 283, 290–91 (Wyo. 1987) (refusing to broaden the crime-fraud exception).

Plaintiffs' position is flawed at every step of the analysis.  First, Plaintiffs use the words "fraud" and "crime" but fail to delineate the applicable elements of fraud or crime, or how the alleged facts fit those elements.  Without such an explanation, Plaintiffs fail to establish the required *prima facie* showing for the exception.  *T Com*, 2011 WL 13060412, at *2 (finding that, in the absence of any discussion about how the facts demonstrate the commission of fraud, defendants did not establish the applicability of the crime-fraud exception).  Plaintiffs have not explained the applicable elements of the crime or fraud allegedly committed, and any documents offered unacceptably leave the court to guess how the documents were prepared in furtherance of a crime or fraud.[1]

Next, one can only assume from Plaintiffs' argument that they believe the court should conduct an *in camera* review of privileged communications due to actions that allegedly constitute attorney misconduct or tortious conduct.  However, given the express holding in *Motley*, Plaintiffs' prima facie showing fails because the conduct asserted is based on alleged discovery misconduct, attorney misconduct or tortious conduct—these assertions of tort are insufficient, as a matter of Tenth Circuit law, to support the Motion to Compel.  Plaintiffs cite cases from the 2nd Circuit, which has extended the crime-fraud exception to conduct beyond fraud or crime, including torts.  However, as held by *Motley*, "the attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud" but the Court declined to extend the exception to torts. 71 F.3d at 1551; *In re Grand Jury Proceedings*, 857 F.2d 710, 712 (10th Cir. 1988); accord, *In re Grand Jury Proceedings, Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983).[2]

---

[1] Mere reference to a crime, 18 U.S.C. § 242, is insufficient to meet Plaintiffs' burden of a prima facie showing without applying the facts at hand to the elements of the alleged crime. [Doc. 146, p. 6]

[2] The holding in *Motley* eviscerates Plaintiffs' reliance on "persuasive authority" from other Circuits. Furthermore, Plaintiffs' recitations of the holdings in the "persuasive authority" are incorrect. Plaintiffs cite *Greenwood v. New York*, 1992 U.S. Dist. LEXIS 11954 for the proposition that "[c]ourts have applied the crime-fraud exception where

Finally, even where a movant establishes a prima facie case a court may deny a motion to compel on the basis of crime-fraud. *Zolin*, 491 U.S. at 562. Here, Plaintiffs are asking the court to review a voluminous amount of material. Plaintiffs' motion is also timed in such a way that will put a significant strain on the schedule of this case given that the discovery deadline has now past. Any *in camera* review will unnecessarily and unduly delay this matter and disrupt the proceedings. Moreover, the relative importance of the communications and documents to the case is questionable. Plaintiffs have flagged various documents related to its crime-fraud claim but the crime-fraud exception applies only where the communications were "made with an intent to further an unlawful act." *U.S. v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989). Plaintiffs have made no showing beyond asserting their imaginary conspiracies that these privileged conversations relate to fraud or crime. The court should consider whether the evidence requested for *in camera* review, together with other available evidence then before the court, is likely to establish that the crime-fraud exception will apply.

Plaintiffs' factual basis is not "adequate to support a good faith belief by a reasonable person," *Caldwell*, 644 P.2d at 26, that an *in camera* review of the materials "may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572.

---

privilege was asserted to protect communications attempting to conceal civil rights violations." Doc. 146, p. 3. However, this assertion is incorrect; the fact that the case involved an alleged violation of the doctor's due process rights pursuant to 42 U.S.C. § 1983 had no bearing on the application of the crime-fraud exception. There, the doctor alleged that perpetration of fraud (*i.e.* falsified patient records) used in an arbitration proceeding was the basis for the application of the crime-fraud exception. Plaintiffs also contend that *Madanes v. Madanes*, 199 F.R.D. 135, 145 (S.D.N.Y. 2001) held, "[c]ourts have invoked the crime-fraud exception to communications related to attorney misconduct." Doc. 146, p. 5. However, *Madanes* applied the crime-fraud exception not due to attorney misconduct, but on the basis of an intentional tort. "At a minimum, then, the attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system." *Madanes*, 199 F.R.D. at 149. Plaintiffs further argue that courts have extended the crime-fraud exception to abuses of court or judicial processes. Doc. 146, p. 6; *In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1985). Again, the case does not hold what Plaintiffs assert. The court held that the crime-fraud exception applies not because of discovery abuses or litigation tactics, but because "the scheme of destruction and concealment thereof involves possible federal crimes, not mere frauds between private litigants." *Id.* at 401. Finally, Plaintiffs assert that in *Diamond v. Stratton*, 95 F.R.D. 503 (S.D.N.Y. 1982), that court extended the crime-fraud exception to discovery misconduct. However, the court, in *Diamond*, did not hold that discovery misconduct triggered the crime-fraud exception, but instead evidence of an intentional tort. *Id.* at 505.

Therefore, Plaintiffs' request for an *in camera* review should be denied. Plaintiffs have failed to make a prima facie showing for an *in camera* review.

### a. Plaintiffs' Allegation of Furtherance of 18 U.S.C. § 242

Plaintiffs only assertion of a potential crime or fraud is that the removal proceedings resulted in a deprivation of Hedquist's rights pursuant to 18 U.S.C. § 242, the criminal counterpart to 42 U.S.C. § 1983. Plaintiffs cannot meet their prima facie burden by making this blanket statement alone. Plaintiffs must demonstrate some connection to the attorney client communication and the furtherance of a crime or fraud. *See Motley*, 71 F.3d at 1551, ("The party claiming that the crime-fraud exception applies must present prima facie evidence that the allegation of attorney participation in crime or fraud has some foundation in fact."). Plaintiffs cite no authority that establishes allegations of *ex parte* communications or withholding of evidence in a contested case hearing further the crime described in 18 U.S.C. § 242. Additionally, Plaintiffs only show that attorney client communication occurred during the contested case proceedings. Plaintiffs have not shown that those attorney client communications were connected, in any way, to the furtherance of a crime or fraud.

### b. Plaintiffs' Alleged Violation of Due Process Rights

The court should ignore Plaintiffs' argument that Hedquist's alleged due process rights violation demonstrates the furtherance of a crime pursuant to 18 U.S.C. § 242, making the crime-fraud exception applicable. Hedquist had no protected property interest in his elected city council position. *See Taylor and Marshall v. Beckham*, 178 U.S. 548, 577 (1900) ("public offices are mere agencies or trusts, and not property as such," and that "the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right"). See also Doc. 14, pp. 8-14. Therefore, Plaintiffs' assertion that attorney client communications were

utilized to further the crime of violating Hedquist's due process rights pursuant to the criminal statute 18 U.S.C. §242 must fail.

### c. Plaintiffs' Allegations of Improper *Ex Parte* Communication

Furthermore, Plaintiffs' argument that the allegations of *ex parte* communication and evidence withholding demonstrate the furtherance of an intentional tort should be rejected by the court as the 10th Circuit has specifically not extended the crime-fraud exception in this manner. *See, Motley*, 71 F.3d at 1551; *T Com LLC v. SOS Teledata, Inc.*, 2011 U.S. Dist. LEXIS 90346 *5 (2011 Okla. N.D.C.).

Plaintiffs' assert that communications between Judy Studer (Studer), Wes Reeves (Reeves) and Patterson were "illegal" in violation of Wyo. Stat. § 16-3-107(k) and 16-3-111. First, even assuming *arguendo*, that these communications were improper, the communications were not illegal. Plaintiffs improperly use the phrase "illegal" because a violation of the Wyoming Administrative Procedures Act is not a criminal violation.

Plaintiffs' cannot connect these communications to the furtherance of any crime or fraud. Simply because communications occurred during the contested case proceeding does not make them in violation of Wyo. Stat. § 16-3-107(k) or 16-3-111 or evidence of the furthering of a crime or fraud.

### d. Plaintiffs' Allegation of Evidence Being Withheld During Contested Case Hearing

Plaintiffs also allege that Defendants covered up exculpatory evidence in the contested case proceedings. Plaintiffs improperly identify this evidence as "exculpatory." Exculpatory evidence is defined as, "evidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary*, 637 (9th ed. 2009). The prosecution in a criminal case has an affirmative duty to disclose exculpatory evidence. *Id.* (emphasis supplied). However, no such duty exists for a

7

petitioner in a civil contested case hearing. Hedquist expressly chose to not participate in the informal hearing. Yet he now complains that the process was unfairly administered.

Additionally, Plaintiffs' contention that Rick Harrah's (Harrah) March 16, 2013 letter was withheld until July 21, 2016, is simply false. Defendant Patterson produced the final, signed copy of the letter to Hedquist on February 12, 2016 as part of *Defendant John Patterson's Responses to Plaintiff's Request for Production,* Patterson 010612-010613. Doc. 146-18. The version which was in Dixon's file appears to have been an unsigned draft. Doc. 146-17.

Defendants further disagree with Plaintiffs' argument that Harrah's March 16, 2013 letter addressed, in any substance, Hedquist's request for cost information. Harrah's letter did not discuss the cost information at all. Rather, Harrah only suggested changes to the "current cost tracking system within Public Services."

Similar to the deficiency in Plaintiffs' argument discussed above, there is no crime or fraud alleged. *See Motley*, 71 F.3d at 1551.

### e. Plaintiffs' Allegations of Fraudulent Concealment or Nondisclosure of Liquidated Damages.

Plaintiffs further allege that Defendants committed the intentional torts of fraudulent concealment and nondisclosure, thereby making the crime-fraud exception applicable. Plaintiffs allege that the furtherance of these intentional torts is evidenced by Defendants' use of the mediation and assessment of liquidated damages against HCI, Beamer's indication on the workplace violence complaint that HCI be designated a non-responsible bidder, and the City Council's decision to designate HCI as a non-responsible bidder on five projects. As discussed at length herein, pursuant to the holding in *Motley*, the court cannot consider tortious conduct in determining whether the crime-fraud exception applies. Moreover, Plaintiffs have not met their

prima facie burden of demonstrating a connection between attorney-client communication and the furtherance of a crime or fraud with respect to these alleged actions.

Assuming the tort of fraudulent concealment exists in Wyoming,[3] under *Zolin,* the plaintiffs must set forth a prima facie showing that fraudulent concealment has likely occurred and that the communications in question were made with the intent of furthering the fraudulent concealment. Plaintiffs do not even mention the elements of fraudulent concealment in their brief, and they certainly do not provide any facts that would support those elements. Judge Freudenthal laid out the elements of fraudulent concealment in *Hayek v. Bank of America Home Loans,* 2013 U.S.Dist. LEXIS 191077, at *21-23, (D. Wyo. 2013), pointing out that not only must a plaintiff produce actual evidence showing that a defendant failed to disclose facts that the defendant knew might justifiably induce the plaintiff to act, but also that the plaintiff must show that the defendant had a special relationship with the plaintiff such that a duty to the plaintiff to disclose those facts would arise. *Sundown, Inc., v. Pearson Real Estate Co.,* 8 P.3d 324, 331-32 (Wyo. 2000). Judge Freudenthal specifically set forth the ways in which that special relationship might arise, and none of them are applicable to the relationship between the plaintiffs and defendants in this case.

Plaintiffs have not, and cannot, produce any evidence that "Defendants and their counsel intentionally induced HCI into a mediation settlement in order to justify disqualify [sic] HCI as a non-responsible bidder on future work," Doc. 148, 13; that the defendants "knew" any of the allegedly undisclosed facts, *Throckmartin v. Century 21 TOP Realty,* 2010 WY 23, ¶ 27, 226 P.3d 793, 808-09 (Wyo. 2010); that Plaintiffs justifiably relied upon any such nondisclosure; or

---

[3] It is not clear whether the tort of fraudulent concealment has even been adopted in Wyoming. *Richey v. Patrick,* 904 P.2d 789, 802 (Wyo. 1995) ("Since we conclude that even if we accepted [the tort of fraudulent nondisclosure] the [plaintiffs'] claims would fail, we do not need to make that determination today"); *Lee v. LPP Mortgage, Ltd.,* 2003 WY 92, ¶ 19, 74 P.3d 152, 160 (Wyo. 2003).

that the communications they wish the court to review were "made with the intent to further [the] unlawful act." *White,* 887 F.2d at 271. More importantly, they have not even attempted to produce any evidence of the type of special relationship between HCI and the defendants necessary for any duty to disclose to arise. Finally, fraudulent concealment must be demonstrated "by clear, unequivocal, and convincing evidence." *Throckmartin,* 2010 WY 23 at ¶ 27, 226 P.3d at 808. Plaintiffs have not provided "a showing of a factual basis adequate to support a good faith belief by a reasonable person," as required by *Zolin* before a Court engages in an *in camera* review.

### f. Plaintiffs' Allegations of Attorney Misconduct by Mr. Luben

Plaintiffs also assert that Bill Luben (Luben) inappropriately communicated on Hedquist matters after he declared a conflict. Again, the 10th Circuit has not extended alleged attorney misconduct to the crime-fraud exception. *See, Motley,* 71 F.3d at 1551.

Plaintiffs have failed to meet their prima facie burden because Luben's alleged conduct does not indicate the furtherance of a crime or fraud. Furthermore, Defendants disagree that Luben acted unethically. Plaintiffs make a significant assumption that because email communication with the subject line "Hedquist" was exchanged, Luben was somehow involved in the legal advice on Hedquist matters. This assumption is incorrect.[4]

## II. Conclusion

For these reasons stated herein, Plaintiffs' request for an *in camera* review of documents pursuant to Plaintiffs' Motion to Compel Production of Documents on the Basis of Crime-Fraud must be denied.

---

[4] As Defendants have previously stated, this scenario is analogous to cases where corporate counsel who declines to serve as a corporation's lawyer when the issue involves an adverse member of the board of directors hires outside litigation counsel. *See* Doc. 124.

Dated this 15th day of August, 2016.

| | |
|---|---|
| JOHN PATTERSON, in his official capacity and the CITY OF CASPER, Defendants | JOHN PATTERSON, in his individual capacity, Defendant |
| BY:   /s/<br>**JOHN A. MASTERSON, #5-2386**<br>**ALAINA M. STEDILLIE, #6-4327**<br>WELBORN SULLIVAN MECK & TOOLEY, P.C.<br>Attorneys for Above-Named Defendants<br>159 N. Wolcott, #220<br>Casper, WY 82601<br>Phone: (307) 234-6907<br>Fax: (307) 234-6908<br>jmasterson@wsmtlaw.com<br>astedillie@wsmtlaw.com | BY:   /s/<br>**BRUCE A. SALZBURG, #5-1711**<br>**TRACI L. LACOCK, # 6-4009**<br>HIRST APPLEGATE, LLP<br>Attorneys for Above-Named Defendant<br>1720 Carey Avenue, Suite 400 (82001)<br>P. O. Box 1083<br>Cheyenne, WY 82003-1083<br>Phone: (307) 632-0541<br>Fax: (307) 632-4999<br>bsalzburg@hirstapplegate.com<br>tlacock@hirstapplegate.com |

ANDREW BEAMER, in his individual capacity, Defendant

BY:   /s/
**KAY LYNN BESTOL, #5-2949**
SUNDAHL, POWERS, KAPP & MARTIN
Attorney for Above-Named Defendant
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY 82003-0328
Phone: (307) 632-6421
Fax: (307) 632-7216
kbestol@spkm.org

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendants' Joint Response to Plaintiffs' Motion to Compel Production of Documents on the Basis of Crime Fraud* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 15 August 2016, and that copies were served as follows;

| | |
|---|---|
| Jamieson & Robinson, LLC<br>185 W. Broadway, Suite 101<br>P. O. Box 4285<br>Jackson, WY 83001<br>*Attorney for Plaintiffs* | ☐ U.S. MAIL<br>☐ FED EX<br>☐ FAX<br>☐ HAND DELIVERED<br>☐ EMAIL<br>☑ E-FILE |

11

F. R. Chapman  
Marci Crank Bramlet  
Chapman, Valdez & Lansing Law Offices  
125 W. 2nd Street  
P. O. Box 2710  
Casper, WY 82602  
*Attorneys for Plaintiffs*

☐ U.S. MAIL  
☐ FED EX  
☐ FAX  
☐ HAND DELIVERED  
☐ EMAIL  
☑ E-FILE

_____  
OF HIRST APPLEGATE, LLP